**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN P. SULLIVAN and | ) | |
| STEPHEN D. HELM, a/k/a | ) | |
| Steven Helm and Steve Helm, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 12 C 7528 |
| v. | ) | |
| | ) | |
| | ) | |
| ALCATEL-LUCENT USA, INC., | ) | |
| a Delaware corporation, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Before the Court is Plaintiffs' Motion to Compel documents withheld on the basis of privilege and for sanctions. (R. 41, Pls.' Mot. to Compel.) For the following reasons, the Court grants in part and denies in part the Motion.

**BACKGROUND**

This case involves a breach of contract dispute over attorneys' fees between Alcatel-Lucent USA, Inc. ("Lucent" or "Defendant") and two of its former attorneys, Plaintiffs John P. Sullivan and Stephen D. Helm. In their Second Amended Complaint, Plaintiffs allege that they entered into a contingency fee agreement with Lucent to represent the company in the contest of a real estate assessment of certain of Lucent's real property in Naperville, Lisle Township, DuPage County, Illinois. (R. 40, Second Am. Compl. ¶ 4 ("SAC").) According to Plaintiffs, the agreement provided "for Lucent to pay a contingent fee of 25 per cent of any real estate tax savings accruing to Lucent if the matter was settled or resolved prior to trial." (*Id.* ¶ 4.)

Plaintiffs seek to recover the contingency fees allegedly due in connection with a settlement reached with the Lisle Township Assessor and the DuPage County Board of Review, in which Lucent purportedly agreed to withdraw its 2010 tax appeal in exchange for agreed tax savings in 2011, 2012, and 2013.  (SAC ¶ 13; Pls.' Supp. Mem. 1.)

On April 5, 2013, Plaintiffs moved to compel the production of documents withheld by Defendant on the basis of the attorney-client privilege.  The Court then entered and continued the Motion and ordered Defendant to produce the documents to the Court for an in camera review along with a Second Revised Privilege Log asserting the grounds for each claim of privilege.  At the Court's directive, Defendant also submitted additional affidavits in support of its contentions that certain employees fell within Defendant's "control group" for purposes of its privilege claims.

Defendant asserts that the attorney-client and work product privileges protect numerous documents as communications between and among in-house counsel and members of the control group relating to the settlement regarding the 2010 tax appeal.  (Def.'s Mem. 4.)  Plaintiffs dispute Lucent's control group contentions, whether certain documents were privileged, and whether Defendant has waived the privilege by asserting an estoppel defense in its Answer based on Plaintiffs' alleged violation of their "professional and ethical obligations to communicate with Alcatel-Lucent . . . regarding the fees that they expected to earn as a result of the settlement of the 2010 property tax appeal."  (R. 46, Ans. ¶ 5.)

## LEGAL STANDARD

### I.     Motion to Compel

The federal discovery rules liberally assist in preparation for trial and settlement of

disputes. *See Bond v. Uteras*, 585 F.3d 1061, 1075 (7th Cir. 2009). Federal Rule of Civil

Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged

matter that is relevant to any party's claim or defense . . . Relevant information need not be

admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of

admissible evidence." Fed. R. Civ. P. 26(b)(1). "If the party from whom the documents are

requested objects to their production, that party has the burden to show why a discovery request

is improper." *John Wiley & Sons, Ltd. v. McDonnell Boehnen Hulbert & Berghoff LLP*, No. 12

C 1446, 2013 WL 505252, at *3 (N.D. Ill. Feb. 12, 2013). With respect to a motion to compel,

the Seventh Circuit instructs that "a district court may grant or deny the motion in whole or in

part, and similar to ruling on a request for a protective order under Rule 26(c), the district court

may fashion a ruling appropriate for the circumstances of the case." *Gile v. United Air Lines,

Inc.*, 95 F.3d 492, 496 (7th Cir. 1996). As with all discovery matters, courts have broad

discretion in deciding motions to compel. *See James v. Hyatt Regency Chi.*, 707 F.3d 775, 784

(7th Cir. 2013).

## II.     Illinois Attorney-Client Privilege

Because diversity of citizenship is the basis for jurisdiction in this case, Illinois law also

governs questions of attorney-client privilege. *See Wychocki v. Franciscan Sisters of Chi.*, No.

10 C 2954, 2011 WL 2446425, at *3 (N.D. Ill. June 15, 2011) (citing Fed. R. Evid. 501); *Favala

v. Cumberland Eng'g Co.*, 17 F.3d 987, 989 (7th Cir. 1994). In defining the attorney-client

privilege, the Illinois Supreme Court has stated that "where legal advice of any kind is sought

from a professional legal adviser in his capacity as such, the communications relating to that

purpose, made in confidence by the client, are protected from disclosure by himself or the legal

adviser, except the protection be waived." *Fischel & Kahn v. van Straaten Gallery*, 189 Ill.2d 579, 584, 244 Ill. Dec. 941, 944, 727 N.E.2d 240, 243 (Ill. 2000). "The purpose of the attorney-client privilege is to encourage and promote full and frank consultation between a client and legal advisor by removing the fear of compelled disclosure of information." *Id.* Nonetheless, Illinois recognizes a "strong policy of encouraging disclosure, with an eye toward ascertaining that truth which is essential to the proper disposition of a lawsuit." *Waste Mgmt. Inc. v. Int'l Surplus Lines Ins. Co.*, 144 Ill. 2d 178, 190, 161 Ill. Dec. 774, 779, 579 N.E.2d 322, 327 (Ill. 1991). Thus, courts should "construe the privilege 'within its narrowest possible limits.'" *Ill. Emasco Ins. Co. v. Nationwide Mut. Ins. Co.*, 393 Ill. App. 3d 782, 786, 332 Ill. Dec. 812, 913 N.E.2d 1102, 1105 (Ill. App. Ct. 2009) (quoting *Waste Mgmt.*, 144 Ill. 2d at 190). The party claiming the privilege "carries the burden of presenting facts that give rise to the privilege." *Janousek v. Slotky*, 2012 IL App (1st) 113432, 980 N.E.2d 641, 650 (Ill. App. Ct. Nov. 26, 2012). This burden includes showing certain "threshold requirements," including: "(1) that the communication originated in a confidence that it would not be disclosed"; "[that] it was made to an attorney acting in his legal capacity for the purpose of securing legal advice or services,"; and (3) "that [it] remained confidential." *Consolidation Coal Co. v. Bucyrus-Erie Co.*, 89 Ill. 2d 103, 119, 432 N.E.2d 250, 257 (Ill. 1982). Although "documents prepared for business purposes or for the purpose of obtaining advice on 'political, strategic, or policy issues'" do not receive protection, "legal advice relating to business matters clearly [does]." *Glenwood Halsted LLC v. Vill. of Glenwood*, No. 11-CV-6772, 2013 WL 140794, at *2 (N.D. Ill. Jan. 11, 2013); *CNR Invs., Inc. v. Jefferson Trust & Sav. Bank of Peoria*, 115 Ill. App. 3d 1071, 1076, 451 N.E.2d 580, 583 (Ill. App. Ct. 1983).

4

As relevant here, payment of fees and information regarding fees are generally not

privileged.  *See People ex rel. Ulrich v. Stukel*, 294 Ill. App. 3d 193, 203-04 (Ill. App. Ct. 1997)

("It is well-recognized that information regarding a client's fees generally is not a "confidential

communication" between an attorney and client, and thus is not protected by the attorney client

privilege.") (citing *Matter of Grand Jury Proceeding, Cherney*, 898 F.2d 565, 567 (7th Cir.

1990)); *Stopka v. Am. Family Mut. Ins. Co., Inc.*, 816 F. Supp. 2d 516, 532 (N.D. Ill. 2011) ("In

the absence of any evidence of legal advice, documents relating to the payment of fees are only

incidental to the attorney-client relationship.")  Nonetheless, confidential communications

relating to legal advice arising in connection with billing matters may be subject to protection.

*Hill v. Metro. Prop. & Cas. Co.*, No. 1-10-1588, 2011 WL 10069435, at *3 (Ill. App. Ct. May

12, 2011) ("[C]onfidential communications relating to legal advice will naturally arise from a

retainer agreement or perhaps during negotiations in the creation of the agreement"); *see also*

*Matter of Witnesses Before the Special 1980 Grand Jury*, 729 F.2d 489, 494 (7th Cir. 1984)

(noting in the context of fee arrangements that the privilege turns "not upon incrimination per se

but upon whether disclosure would in effect reveal information which has been confidentially

communicated").

Illinois law follows the "control group" test for privilege claims.  *Id.*; *see also Dell v. Bd.*

*of Educ., Twp. High Sch. Dist. 113*, 32 F.3d 1053, 1065 (7th Cir. 1994).  As such, "not every

communication made to a corporation's attorney by an employee of the corporation is privileged

but, rather, the corporation attorney-client privilege applies only to those employees within the

control group."  *Sterling Fin. Mgmt., L.P. v. UBS PaineWebber, Inc.*, 336 Ill. App. 3d 442, 448,

782 N.E.2d 895, 900 (Ill. App. Ct. 2002).  In *Consolidation Coal Co.*, the Illinois Supreme Court

defined the control group as consisting of (1) "top management persons who have the responsibility of making final decisions" and (2) "employee[s] whose advisory role to top management in a particular area is such that a decision would not normally be made without [their] advice or opinion, and whose opinion[s] in fact forms the basis of any final decision by those with actual authority." 89 Ill. 2d at 120; *Hayes v. Burlington N. & Santa Fe Ry. Co.*, 323 Ill. App. 3d 474, 477, 752 N.E.2d 470, 473 (Ill. App. Ct. 2001). "Employees not within the control group include those whom top management merely relies upon for supplying information." *Archer Daniels Midland Co. v. Koppers Co., Inc.*, 138 Ill. App. 3d 276, 278-79, 485 N.E.2d 1301, 1303 (Ill. App. Ct. 1985); *see also Favala*, 17 F.3d at 990.

## ANALYSIS

### I.     Attorney-Client Privilege

#### A.     Control Group

Because Illinois law follows the "control group" test for privilege claims, the Court first will determine the members of Defendant's control group. The parties agree that Lewis Lefkowitz, Alexis Mendoza, and Eric Rosen, as in-house attorneys for Defendant, fall within the control group. (Pls.' Supp. Mem. 10.) Plaintiffs further acknowledge that Patrick Morrison, the head of ALU's Real Estate Organization for the Americas (Def.'s Mem. 4.), may fall into this category. (*Id.*) Plaintiffs object, however, to the inclusion of Colin Cameron, Manuel Martinez, Ed Goldston, Stephen Hullings, Economic Analysis Manager in ALU's Real Estate organization, Daniel Viollt, Area Master Planner/Manager in ALU's Real Estate organization, Robert Van Buskirk, and Doris Battle based upon their alleged lack of decisionmaking authority. (Pls.' Mot. 10; Def.'s Mem. 4.) Defendant contends that Mr. Morrison, Mr. Cameron, Mr. Hullings, and

Mr. Viollt comprise the "group of employees that forms and authorizes all final ALU decisions with respect to real estate taxes for the piece of property at issue in this case, or provides advice to top management to allow management to make a decision regarding the issue." (Def.'s Mem. 4.) On May 17, Defendant submitted affidavits from Mr. Cameron and Mr. Morrison, in addition to their earlier affidavit from Mr. Mendoza, in support of their control group contentions.

### 1.    Colin Cameron

Colin Cameron is a former Asset Manager in Defendant's Real Estate organization. In his affidavit, Mr. Cameron states that "[i]t was [his] job" during the 2010 tax appeal to provide his opinion and advise both Patrick Morrison and Lewis Lefkowitz. (R. 55, Cameron Aff. ¶ 5.) Mr. Mendoza, who attests that he is "personally familiar with the key employees involved with the decision-making process" regarding the tax appeal states that Mr. Cameron was the "primary contact/client for the 2010 tax appeal" and that "his analysis and recommendation were part of ALU's decision to settle the appeal." (R. 49, Ex. C, Mendoza Aff. ¶ 6.) Plaintiffs do not contest the factual allegations underlying these contentions. Thus, Defendant has sufficiently shown that Mr. Cameron was an employee for the period in question "whose advisory role to top management in a particular area is such that a decision would not normally be made without [his] advice or opinion" and thus was a member of Defendant's control group.

### 2.    Patrick Morrison

Mr. Morrison states that he is the head of the ALU Real Estate organization for the Americas, and according to Mr. Mendoza was Mr. Cameron's former manager. (Mendoza Aff. ¶ 7.) Mr. Morrison further states that he "had the authority to make the final decisions with

respect to the 2010 tax appeal and settlement thereof" and made such decisions. (Morrison Aff. ¶ 4-6.) Mr. Mendoza corroborates this information in his affidavit. (Mendoza Aff. ¶ 7.) In addition, in their Supplemental Memorandum in support of the Motion, Plaintiffs have noted their willingness to consider that Mr. Morrison qualifies as a control group member. (Pls.' Supp. Mem. 5.) Thus, Defendant has made a sufficient showing that Mr. Morrison qualifies as a "top management person[] who ha[s] the responsibility of making final decisions" such that he falls within Defendant's control group.

### 3. Stephen Hullings and Daniel Viollt

Defendant did not submit affidavits from Mr. Hullings or Mr. Viollt, but contends that they too are members of the control group. With respect to Mr. Hullings, Mr. Cameron described Mr. Hullings as an "Economic Analysis Manager" who along with Mr. Cameron, "created various correspondence and documents" in order "to seek legal advice from Mr. Lefkowitz and to illustrate [his] opinions and advice for Mr. Morrison." (Cameron Aff. ¶ 7.) Specifically, Mr. Mendoza identifies Mr. Hullings as an individual whom "Mr. Cameron relied in part" upon for "information and input . . . in order to make a recommendation on the settlement of the 2010 tax appeal." (Mendoza Aff. ¶ 7.) Similarly, with respect to Mr. Viollt, Mr. Cameron avers that Mr. Viollt is an "Area Master Planner/Manager in ALU's real estate organization" who reported directly to Mr. Cameron and created documents in order to seek legal advice from Mr. Lefkowitz. (Cameron Aff. ¶ 7.)

Defendant has not satisfied its burden of showing that Mr. Viollt and Mr. Hullings are control group members. Specifically, Defendant has not made a sufficient factual showing that Mr. Viollt and Mr. Hullings are individuals whom "top management would normally consult in

8

making decisions" as opposed to those who merely supply information to top management. Although Mr. Morrison states in his affidavit that he "would not have made a decision with respect to the 2010 tax appeal . . . without seeking the advice and opinions of Mr. Cameron and his team," which presumably includes Mr. Viollt and Mr. Hullings, Defendant fails to provide sufficient factual detail in its affidavits to bear out this determination with respect to Mr. Viollt and Mr. Hullings. *Trustmark Ins. Co.*, 2000 WL 1898518, at *6 (focus of the control group inquiry is "on individual people who substantially influenced decisions, not on facts that substantially influenced decisions"). As such, any distribution of documents to Mr. Hullings and Mr. Viollt as non-control group members destroys the privilege. *See Sterling Fin. Mgmt*, 336 Ill. App. 3d at 448; *see also Trustmark Ins. Co.*, 2000 WL 1898518, at *4. Consequently, the attorney-client privilege does not protect the following documents listed in Defendant's Second Revised Privilege Log that members of the control group distributed to non-control group members: ALU 71-73, ALU 77-79, ALU 81-82, ALU 89-92, and ALU 96-99.

**B.      Documents Over Which Defendant Claims the Attorney-Client Privilege**

In its Second Revised Privilege Log, Defendant asserts the attorney-client privilege over a number of documents. To establish the privilege, Defendant must show the *Consolidation Coal Co.* threshold requirements that "(1) that the communication originated in a confidence that it would not be disclosed; (2) "[that] it was made to an attorney acting in his legal capacity for the purpose of securing legal advice or services,"; and (3) "that [it] remained confidential." 89 Ill. 2d at 119. The Court will discuss the documents by grouping in turn.

**1.      ALU 63-64, 71-73; 89, 90, 91, and 92**

ALU 71, ALU 72, and 73 involve communications between Mr. Cameron and Mr.

Hullings. In their Second Revised Privilege Log, Defendant describes these communications as "email correspondence between ALU control group members re: Lisle Township settlement options spreadsheet and creation of same spreadsheet." (Second Revised Privilege Log 71-73.) Because Mr. Hullings is not a member of the control group, however, the privilege does not extend to these communications. *See Sterling Fin. Mgmt.*, 336 Ill. App. 3d at 448. The same rationale applies to ALU 90, 91, and 92, which are substantially the same set of emails. Similarly, the privilege does not protect ALU 89 or ALU 63-64 because of the distribution of the communication to or from a non-control group member.

### 2. ALU 807

Based upon the Court's in camera inspection, ALU 807 is not a privileged communication. ALU 807 consists of an email from Plaintiff John Sullivan to Mr. Lefkowitz and Mr. Cameron with the retention agreement attached, an email forwarding that email from Mr. Cameron to Mr. Morrison, and Mr. Morrison's comment by email on the forwarded email. In their Second Revised Privilege Log, Defendant describes ALU 807 as a forwarding of the engagement letter with Plaintiffs for the purpose of making a fee determination and Mr. Morrison's comment on the letter. Although the sending of privileged communications within control group members does not destroy any privilege attached to the communication, *see Ocean Atl. Dev. Corp. v. Willow Tree Farm, L.L.C.*, 01 C 5014, 2002 WL 1968581, at *4 (N.D. Ill. Aug. 23, 2002), the distributed communication must nonetheless satisfy the privilege requirements in the first place. Here, that is not the case. Although the forwarded email was originally sent to Mr. Lefkowitz, the purpose of that email was not to seek legal advice. Rather, the email contained a copy of the retention agreement and an update from Mr. Sullivan, one of

10

the Plaintiffs here, on the appeal.  Mr. Cameron's forwarding of the email to Mr.

Morrison–although both are control group members–also contains no legal advice.  Nor does Mr.

Morrison's comment constitute legal advice, as according to the representations of the parties,

Mr. Morrison is not an attorney and his comment does not contain legal advice from an attorney.

Thus, ALU 807 is not privileged.

### 3.    ALU 23-24, 25-26, 50, 60, and 61

ALU 23-24 involve the response of Mr. Lefkowitz to an email on which he was copied

from Mr. Cameron to Mr. Morrison.  The email from Mr. Cameron to Mr. Morrison addresses

settlement options with respect to the 2010 tax appeal.  Mr. Lefkowitz's response further

addresses this topic.  As such, Mr. Cameron appears to have sent the email for the purpose of

seeking legal advice and with the expectation that it would remain confidential.  *See Cent. Die*

*Casting & Mfg. Co., Inc. v. Tokheim Corp.*, No. 93 C 7692, 1994 WL 444796, at *3 (N.D. Ill.

Aug. 15, 1994) (Williams, J.) (noting that despite the absence of a marker that the document was

privileged, the "circumstances are such that [the recipients] could reasonably have understood

the communications to be [confidential].").  Thus, ALU 23-24 are privileged.

ALU 25 is also privileged.  In this email, Mr. Lefkowitz provides legal advice regarding

negotiations with Lisle Township.  ALU 26 is similarly privileged because it involves a

communication directed to an attorney.  Specifically, the document is an email from Mr.

Cameron to Mr. Morrison with Mr. Lefkowitz copied, in which Mr. Cameron in part seeks

advice on settlement options.  Although copying an attorney on an email does not automatically

make it privileged, *see Musa-Muaremi v. Florists' Transworld Delivery, Inc.*, 270 F. R. D. 312,

316 (N.D. Ill. 2010), here, the sender "could reasonably believe under the circumstances [that the

11

email] would be understood by [an] attorney as [confidential]." *Waste Mgmt.*, 144 Ill. 2d at 190. ALU 50, 60, and 61 are similarly privileged because they contain legal advice from Mr. Lefkowitz to either another in-house attorney and or another member of the control group with respect to the present suit, which the parties to the email could reasonably have understood to remain confidential. *See id.*

### 4. ALU 62, 80, 87, 215, 225, 262, and 266-67

ALU 62 is similarly privileged as a communication directed to an attorney for the purpose of securing legal advice. ALU 80 is privileged because it contains legal advice in response to an email from Mr. Morrison regarding settlement options from Mr. Lefkowitz.

ALU 87 consists of Mr. Lefkowitz's response to an email addressed to Mr. Morrison from Mr. Cameron on which Mr. Morrison copied Mr. Lefkowitz. The portion of Mr. Lefkowitz's response is privileged because it contains legal advice and satisfies the other privilege requirements.

With respect to ALU 215, Defendant claims the document is "email correspondence from corporate counsel to ALU control group and outside counsel seeking legal advice re: Milton Township tax appeal." (Second Revised Privilege Log 6.) Although it is not entirely clear whether the "Milton Township" offer is another term for the Lisle Township offer, the email appears in part to be Mr. Lefkowitz seeking advice from outside counsel regarding the Milton Township offer and PTAB stipulations. Nonetheless, the communication appears to be for the purpose of seeking legal advice, and thus is privileged.

ALU 225 is privileged because it involves advice from Mr. Lefkowitz to Mr. Cameron regarding the interpretation of certain terms. In addition to being marked "confidential," the

nature of the document is such that it qualifies as a client confidence. ALU 262 and 266-267 are also exchanges of legal advice between Mr. Lefkowitz and Mr. Cameron regarding the tax appeal.

ALU 271-272 involve email exchanges between Mr. Lefkowitz and Mr. Cameron. Although it is not entirely clear, in ALU 271, Mr. Cameron relates to Mr. Lefkowitz legal advice-seemingly originating in part from Plaintiff John Sullivan–regarding the details and execution of the tax appeal, although not with respect to any fees owed to Plaintiffs. ALU 272 involves legal advice from Mr. Lefkowitz on the same issue. Based upon the facts and circumstances, the Court concludes that both of these documents are privileged.

### 5.    ALU 46-47, 156, 102, 16, 151, 33, and 35-36

Although Defendant contends that ALU 46-47 contains legal advice from corporate counsel, the Court's in camera review reveals otherwise for several reasons. First, the initial email in the chain is from Plaintiff John Sullivan regarding legal fees. Because it relates to fees and does not independently contain legal advice or confidential communications, it is not privileged. *See Stukel,* 294 Ill. App. 3d at 203-04; *Special 1980 Grand Jury*, 729 F.2d at 494 (7th Cir. 1984). Second, the remaining emails in the chain, although sent within members of the control group and containing statements by attorneys, do not contain legal advice. Although the emails reference a "proposed response" letter attached to the second email that could be privileged, Defendant did not provide that letter to the Court. Thus, the Court's ruling does not reach this letter.

In addition, ALU 156 is not privileged. Although it contains statements by Mr. Lefkowitz in response to a communication attached to an email from Plaintiff Sullivan, Mr.

Lefkowitz's statements do not provide legal advice. Because Defendant has not provided the underlying attached communication, the Court's ruling does not reach it.

ALU 102 and ALU 16 similarly contain emails from Mr. Sullivan and responses by Mr. Lefkowitz and Mr. Cameron that are not legal advice and are therefore not privileged. Rather, these communications merely acknowledge the involvement of Mr. Sullivan in the appeal process or the existence of an issue regarding legal fees. *See Dawson*, 901 F. Supp. at 1367 (concluding that attorneys were acting more as providers of factual information rather than legal advice where purpose of attorneys was not to "instruct the employees on the proper use of this information").

For similar reasons, ALU 151 is not privileged. ALU 151 consists of two emails. The first is from Plaintiff John Sullivan to Mr. Lefkowitz copying Mr. Cameron and Plaintiff Stephen Helm and setting forth the total fees for the 2011 services and attaching a fee statement and a tax form. Because generally fee matters are not privileged, this email is not protected. *See Stukel,* 294 Ill. App. 3d at 203-04. The second email is Mr. Lefkowitz's response to the email to Mr. Cameron, in which he copies Mr. Mendoza. Although Defendant claims the second email contains legal advice, in reality, it is no more than a description of how the attached fee statement compares with the engagement letter and Plaintiffs' current claims for fees for services beyond the 2011 tax year. As such, the email, although sent within members of the control group, does not provide any legal advice with respect to, or discuss the legal consequences of, the fee statement. *See Dawson*, 901 F. Supp. 1362, 1367 (N.D. Ill. 1995). Moreover, as explained more fully below, even if either of these emails qualifies as privileged, Defendant has waived any privilege with respect to these communications by asserting its estoppel defense and

14

placing at issue Plaintiffs' communications with Defendant regarding their fees. Because ALU

33 and ALU 35-36 are essentially the same emails as ALU 151, they are similarly not privileged.

## II.     Waiver by Estoppel Defense

Plaintiffs further argue that Defendant's assertion of the affirmative defense of estoppel

constitutes an implied waiver of the right to claim attorney-client privilege with respect to

certain communications. In its Answer, Defendant states that because Plaintiffs "violated their

professional and ethical obligations to communicate with Alcatel-Lucent-in writing or

otherwise-regarding the fees that they expected to earn as a result of the settlement of the 2010

property tax appeal," Plaintiffs are "estopped from seeking recovery of such amounts." (Ans. ¶

5.) Specifically, Plaintiffs contend that by asserting this affirmative defense, Defendant has

placed "at issue any documents that might show that . . . Defendants [sic] were fully informed

regarding Plaintiffs' attorneys fees and that Defendants did in fact know what Plaintiffs' [sic]

attorneys fees were going to be." (Pls.' Supp. Mem. 9.) In particular, Plaintiffs claim that the

waiver applies to a spreadsheet prepared by Defendant's employees analyzing settlement

options.        In response, Defendant argues that under *Fischel & Kahn, Ltd. v. van Straaten

Gallery, Inc.*, 189 Ill. 2d 579, 587, 244 Ill. Dec. 941, 946, 727 N.E.2d 240, 244 (Ill. 2000),

Defendant has not committed "at issue" waiver. Defendant further contends that the spreadsheet

at issue is protected by the work product doctrine. The Court will consider the waiver and work

product arguments separately below.

### A.     "At Issue" Waiver

Under Illinois law, "at issue" waiver occurs "where a party voluntarily injects either a

factual or legal issue into the case, the truthful resolution of which requires an examination of the

confidential communications." *Lama v. Preskill*, 353 Ill. App. 3d 300, 305, 288 Ill. Dec. 755, 818 N.E.2d 443, 448 (Ill. App. Ct. 2004.) The fact that an issue may be merely "subject to dispute" by the parties, however, does not mean they have waived the privilege with respect to any attorney-client communications "that might touch on that question." *See Fischel & Kahn, Ltd. v. van Straaten Gallery, Inc.*, 189 Ill. 2d 579, 587, 244 Ill. Dec. 941, 946, 727 N.E.2d 240, 244 (Ill. 2000); *Hayes v. Burlington N. & Santa Fe Ry. Co.*, 323 Ill. App. 3d 474, 480, 256 Ill. Dec. 590, 596, 752 N.E.2d 470, 476 (Ill. App. Ct. 2001) (rejecting the notion that the attorney-client privilege "should yield when evidence contained in defendant's documents may help plaintiff to rebut an issue raised by defendant."). "Advice is not in issue merely because it is relevant, and does not necessarily become in issue merely because the attorney's advice might affect the client's state of mind in a relevant matter." *In re Estate of Wright*, 377 Ill. App. 3d 800, 805, 317 Ill. Dec. 194, 199, 881 N.E.2d 362, 367 (Ill. App. Ct. 2007). Rather, at issue waiver arises only if "the litigant directly puts the attorney's advice at issue in the litigation." *Estate of Wright*, 377 Ill. App. 3d at 805. Nonetheless, "[m]ere convenience . . . should not justify waiver of the attorney-client privilege." *Fischel & Kahn*, 189 Ill.2d at 590 (noting the privileged information must not be merely "one alternative means" for obtaining the information).

Defendant's attempt to cast *Fischel & Kahn* as supporting its position is unpersuasive. In *Fischel & Kahn*, a law firm that had advised an art gallery on certain contracts, later sued the art gallery for recovery of legal fees. The art gallery then filed a counterclaim against Fischel & Kahn for malpractice, alleging that the firm had erroneously advised the gallery regarding the liability limiting provision of a contract that the gallery used with consignment artists. Fischel &

16

Kahn then requested the contents of the files of Pope & John, a second law firm that the art gallery had hired in connection with litigation involving the consignment artists. The art gallery asserted the privilege with Pope & John with respect to those files. Fischel & Kahn argued that the art gallery had waived the privilege by filing a counterclaim and thus placing "at issue" the files in the suit with Fischel & Kahn, which contained facts "central to the question of whether Fischel & Kahn can be held liable for malpractice." 189 Ill. 2d at 585. Although the Illinois Supreme Court rejected the waiver claim with respect to the second law firm, it noted that it was "undisputed that [the art gallery], by counterclaiming against Fischel & Kahn for legal malpractice, ha[d] placed Fischel & Kahn's advice at issue and has waived the attorney-client privilege with respect to communications between it and Fischel & Kahn." 189 Ill. 2d at 585. Here, Defendant has similarly asserted an affirmative defense contending that Plaintiffs are estopped from recovering legal fees in connection with the property tax appeal because of an alleged failure to communicate with Defendant regarding their expected fees for their work on the settlement. Thus, Defendant's argument fails.

Defendant, therefore, has placed at issue any previously privileged communications that show or support that Defendant was fully informed concerning, and knew the amount of, Plaintiffs' fees or the potential scope of such fees. Accordingly, based upon the Court's in camera review, the Court orders Defendant to produce ALU 68 and ALU 26, which both reference "attorney fees" in connection with settlement negotiations regarding the tax assessment, as well as ALU 23-24, ALU 25, ALU 87, ALU 33, ALU 35-36, and ALU 151.

III.    **Work Product Claims**

Defendant argues that the work-product immunity protects documents numbered ALU

17

71, 72, 77-79, 81-82, 89-92, 96-99, and 259-261.  Defendant claims that all of these documents

involve or reference the creation of a spreadsheet regarding options on how to address the Lisle

Township tax assessment matter, and specifically the costs and benefits of settling the matter or

proceeding with the appeal.  (Def.'s Second Revised Log.)  Plaintiffs argue that the spreadsheet

is not protected by the work product doctrine.

Work product protects "documents and tangible things that are prepared in anticipation of

litigation or for trial by or for another party or its representative (including the other party's

attorney, consultant, surety, indemnitor, insurer, or agent)."  Fed. R. Civ. P 26(b)(3); *Sandra T.E.*

*v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010).  The work product privilege "is

designed to serve dual purposes: (1) to protect an attorney's thought processes and mental

impressions against disclosure; and (2) to limit the circumstances in which attorneys may

piggyback on the fact-finding investigation of their more diligent counterparts."  *Sandra T.E.*,

600 F.3d at 621-22.  In determining whether the work-product doctrine applies, courts should

"look to whether in light of the factual context 'the document can fairly be said to have been

prepared or obtained because of the prospect of litigation.'"  *Logan v. Commercial Union Ins.*

*Co.*, 96 F.3d 971, 976-77 (7th Cir. 1996).  The party claiming work product immunity has the

burden of showing it applies.  *One Place Condo. LLC v. Travelers Prop. Cas. Co. of Am.*, No. 11

C 2520, 2013 WL 788092, at *2 (N.D. Ill. Mar. 1, 2013).

Plaintiffs argue that the work-product privilege does not apply to the documents in

question because they were neither created by an attorney nor are the "theories, mental

impressions, or litigation plans" of an attorney of Defendant.  In supporting their argument,

Plaintiffs mistakenly rely on the Illinois work product doctrine.  The federal work-product

18

doctrine applies in diversity cases.  *Stopka v. Am. Family Mut. Ins. Co.*, Inc., 816 F. Supp. 2d

516, 524 (N.D. Ill. 2011); *In re Professionals Direct Ins. Co.*, 578 F.3d 432, 438 (6th Cir. 2009).

More importantly, Plaintiffs' argument is without merit under the federal doctrine.  The text of

Rule 26 protects "all 'documents and tangible things that are prepared in anticipation of

litigation.'"  *Appleton Papers, Inc. v. E.P.A.*, 702 F.3d 1018, 1023 (7th Cir. 2012).  Courts have

recognized that work-product protection applies to documents created by non-attorneys.  *Id.* at

1024 (noting a non-testifying expert consultant's work will, by definition, be work product

because the party uses the consultant "in anticipation of litigation."); *City of Lakeland

Employees Pension Plan v. Baxter Int'l Inc.*, No. 10 C 6016, 2013 WL 2151509, at *2 (N.D. Ill.

May 16, 2013) (holding materials created by consultants constituted work product material).

Nor do Plaintiffs argue that an individual prepared the document in the ordinary course of

business or because of merely the "remote prospect of litigation."  *Sandra T.E.*, 600 F.3d at 622.

Indeed, there is no dispute that the documents were addressed to evaluating settlement options in

response to a specific tax assessment.

Based upon the Court's in camera inspection of the documents, the Court agrees that the

documents and accompanying emails were prepared in anticipation of an "articulable claim" of

litigation–that is the proceedings in connection with the Lisle Township tax assessment and

appeal.[1]  *See id.* at 622.  Accordingly, the work-product privilege protects documents numbered

_____

[1]  Defendant further asserts that the work-product doctrine protects these documents in
this litigation even though Defendant prepared them for the proceeding concerning the Lisle
Township tax assessment.  Because Plaintiffs fail to address this argument, they have waived it.
Nonetheless, for the sake of clarity, the Court agrees with Defendant that the fact that the
documents were prepared for other litigation does not bar application of the work product
doctrine in these circumstances.  Although the Seventh Circuit has not decided this issue, it has
noted the majority view that the work product privilege "endures after termination of the

ALU 71, 72, 77-79, 81-82, 89-92, 96-99, and 259-261.[2]

## IV.    Request for Reasonable Expenses and Attorneys' Fees

In the event that the Court granted the Motion, Plaintiffs further seek pursuant to Federal Rule of Civil Procedure 37(a)(5) an order requiring Defendant to pay Plaintiffs' costs and attorneys fees incurred in making the Motion.  As the Seventh Circuit has observed, this rule "presumptively requires every loser to make good the victor's costs."  *See Rickels v. City of South Bend, Ind.*, 33 F.3d 785, 786 (7th Cir. 1994).  Because the Court has granted the motion in part and denied the Motion in part, the Court will exercise its discretion to apportion costs.  *See* Federal Rule of Procedure 37(a)(5)(C).  Accordingly, based upon Defendant's lack of substantial justification for withholding a number of the privileged documents and deficiencies in the privilege logs, the Court orders Defendant to pay one half of Plaintiffs' legal fees incurred in bringing this Motion.  Plaintiffs must file their fee petition on or before June 28, 2013. Defendant shall respond by July 10, 2013.

---

proceedings for which the documents were created, especially if the old and new matters are related."  *Hobley v. Burge*, 433 F.3d 946, 949 (7th Cir. 2006).  Courts in this District have applied this "emerging majority view."  *See, e.g.*, *Lawrence E. Jaffee Pension Plan v. Household Int'l, Inc.*, 237 F.R.D. 176, 182 (N.D. Ill. 2006); *Jumper v. Yellow Corp.*, 176 F.R.D. 282, 286 (N.D. Ill. 1997).  Here, the matters are related because Plaintiffs' claim for attorney's fees allegedly owed arises from the same tax matter for which the spreadsheet was prepared.

[2] Because Plaintiffs did not specifically argue that Defendant had waived the *work-product*–as opposed to the attorney-client–privilege for the spreadsheet and related documents, and the scope of work-product protection under federal law "is distinct from and broader than the attorney-client privilege," *see Appleton Papers*, 702 F.3d at 1024, the Court will not address any purported argument on this basis.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the Motion. In accordance with this ruling, Defendant shall produce to Plaintiffs unredacted versions of documents numbered ALU 807, ALU 46-47, ALU 156, 102, ALU 16, ALU 23-24, ALU 25, ALU 26, ALU 68, ALU 87, ALU 33, ALU 35-36, ALU 151 on or before June 17, 2013.

**Date: June 12, 2013**

**ENTERED**

AMY J. ST. EVE
United States District Court Judge