# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOHN P. SULLIVAN, D.D.S, J.D, and<br>STEPHEN D. HELM, | )<br>)<br>) |
| Plaintiffs, | ) No. 12 C 07528 |
| v. | )<br>) |
| | ) Judge Amy J. St. Eve |
| ALCATEL-LUCENT USA, INC., a Delaware<br>Corporation, | )<br>)<br>) |
| Defendant. | )<br>)<br>) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge,

Plaintiffs John P. Sullivan, D.D.S, J.D. ("Sullivan") and Stephen D. Helm ("Helm") filed the present three-count Complaint against Alcatel-Lucent USA, Inc. ("Lucent" or "Defendant") based on the Court's diversity jurisdiction. *See* 28 U.S.C. § 1332(a). In Count I, Plaintiffs allege a breach of contract claim based on a contingent fee agreement ("Agreement") with Lucent. In Count II, Plaintiffs allege an anticipatory breach of contract claim based on work they performed on Lucent's behalf pursuant to the Agreement. In the alternative, in Count III, Plaintiffs allege an unjust enrichment claim for tax savings that Plaintiffs secured for Lucent for tax years 2011, 2012, and 2013. Before the Court are Plaintiffs' and Defendant's cross-motions for summary judgment brought pursuant to Federal Rule of Civil Procedure 56(a). For the following reasons, the Court grants in part and denies in part Plaintiffs' motion and denies Defendant's motion.

## BACKGROUND

I.    **Northern District of Illinois Local Rule 56.1**

Local Rule 56.1 "is designed, in part, to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson,* 634 F.3d 895, 899 (7th Cir. 2011) (citation omitted). Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Cracco v. Vitran Exp., Inc.,* 559 F.3d 625, 632 (7th Cir. 2009). "The opposing party is required to file 'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." *Id.* (citing N.D. Ill. R. 56.1(b)(3)(B)). Local Rule 56.1(b)(3)(C) requires the nonmoving party to present a separate statement of additional facts that requires the denial of summary judgment. *See Ciomber v. Cooperative Plus, Inc.,* 527 F.3d 635, 643-44 (7th Cir. 2008).

In general, the purpose of Local Rule 56.1 statements and responses is to identify the relevant admissible evidence supporting the material facts, not to make factual or legal arguments. *See Cady v. Sheahan,* 467 F.3d 1057, 1060 (7th Cir. 2006) ("statement of material facts did [] not comply with Rule 56.1 as it failed to adequately cite the record and was filled with irrelevant information, legal arguments, and conjecture"). "When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion." *Cracco*, 559 F.3d at 632. In sum, "[f]or litigants appearing in the Northern District of Illinois, the Rule 56.1 statement is a critical, and required, component of a litigant's response to a motion for summary

judgment. The purpose of the local rule is to make the summary judgment process less burdensome on district courts, by requiring the parties to nail down the relevant facts and the way they propose to support them." *Sojka v. Bovis Lend Lease, Inc.,* 686 F.3d 394, 398 (7th Cir. 2012). In addition, the Rule 56.1 statement does not abrogate a party's obligation to recite its version of the facts in its supporting memorandum. *Malec v. Sanford*, 191 F.R.D. 581, 585 (N.D. Ill. 2000). With these standards in mind, the Court turns to the relevant facts of this case.

## II. Relevant Facts

Plaintiffs are licensed attorneys who practice law in the State of Illinois. (R. 93, Pl.'s Rule 56.1 Stmt. Facts ¶ 1.) Lucent is a Delaware corporation with its headquarters and principal place of business in the State of New Jersey. (R. 104, Def. Rule 56.1 Stmt. Add'l Facts ¶ 2.) Lucent owns commercial property in Naperville, Illinois ("Naperville Property"). (Pl. Stmt. Facts ¶ 3.) In late 2010 or early 2011, Lucent decided to contest the 2010 real estate tax assessment of the Naperville Property. (Def. Stmt. Add'l Facts ¶ 3.) Lucent initially employed Marvin F. Poer & Co. ("Marvin Poer") to contest the 2010 real estate tax assessment for the Naperville Property. (*Id.* ¶ 4.) Marvin Poer appealed the 2010 real estate tax assessment before the DuPage County Board of Review. (Pl. Stmt. Facts ¶ 6.) Plaintiff Sullivan assisted the Marvin Poer representative in processing Lucent's appeal. (Def. Stmt. Add'l Facts ¶ 6.) Marvin Poer's appeal was unsuccessful and Lucent paid 2010 real estate taxes for the Naperville Property in the amount of $2,525,187.46, which was based on an assessed valuation of $42,829,550. (Pl. Stmt. Facts ¶¶ 6-7.)

Following the unsuccessful appeal, Sullivan had a discussion with the Lisle Township Assessor, John Trowbridge ("Trowbridge"), who proposed a settlement offer reducing the 2010 and 2011 tax assessment for the Naperville Property. (Def. Stmt. Add'l. Facts ¶ 9.) On

3

February 6, 2011, Sullivan forwarded an email to Lewis Lefkowitz ("Lefkowitz"), in-house counsel at Lucent, describing Trowbridge's offer and recommending that Lucent decline the offer. (*Id.* ¶ 10-11.) Sullivan wrote that if Lucent rejects the offer it "has 30 days to file a 'PTAB' appeal with the state review board. Steve Helm and I would negotiate a contingent fee agreement to represent ALU on this (similar to the Forest Preserve agreement but with the % fee based on 1st year savings only)." (R.104-1, Feb. 6, 2011 Email.) Lefkowitz ultimately retained Plaintiffs to prosecute an appeal of the 2010 assessed valuation of the Naperville Property before the Illinois Tax Appeal Board ("PTAB"). (Pl. Stmt. Facts ¶ 8.) On March 7, 2011, the parties entered into a contingent fee agreement ("Agreement") in which the parties agreed that Plaintiffs would represent Lucent "in the contest of the real estate assessment of its real property located in Lisle Township, Naperville, IL." (R. 89-7, Contingent Fee Agreement.) The Agreement provided that Plaintiffs' fee "will be structured as a fee contingent on savings on the current year's taxes in these actions as follows: (a) 25% of such amount if the matter is settled or otherwise resolved prior to trial; or (b) 30% of such amount if the matter is settled or otherwise resolved after trial." (*Id.*) Lefkowitz was Lucent's primary attorney who dealt with Plaintiffs and he prepared and signed the Agreement. (Pl. Stmt. Facts ¶ 9.)

On April 18, 2011, Plaintiffs filed before the PTAB a Commercial Appeal for Assessment Year 2010 for the Naperville Property on behalf of Lucent. (Pl. Stmt. Facts ¶ 27.) The City of Naperville and School District 203 intervened in the PTAB Appeal because they already had received funds from Lucent's 2010 real estate taxes on the Naperville Property. (Pl. Stmt. Facts ¶ 41.) On or about October 27, 2011, the Lisle Township Assessor assessed the value of the Naperville Property for the 2011 calendar year at $42,829,710, which represented an increase of $160 over the 2010 assessed value. (*Id.* ¶¶ 29-31.) On November 21, 2011, Lucent

executed a "Letter of Authority to Act in Matters of Property Taxation" that appointed Sullivan to represent Lucent as its property tax agent with respect to the Naperville Property. (R. 89-16, Letter of Authority.) Pursuant to that Letter of Authority, on November 23, 2011, Plaintiffs filed an appeal for Tax Year 2011 with the DuPage County Board of Review ("2011 Assessment Appeal"). (Pl. Stmt. Facts ¶ 35.) The parties did not execute a new fee agreement to address Plaintiffs' work negotiating the 2011 Assessment. (Pl. Stmt. Facts ¶ 58.)[1] Lefkowitz testified at his deposition that Sullivan and Helm did not bill their work on an hourly basis and that the parties intended for the Agreement to cover Plaintiffs' work negotiating the 2011, 2012, and 2013 Assessment Years. (*Id.* ¶ 59.)

After filing the 2011 Assessment Appeal, Plaintiffs began negotiating with Trowbridge regarding the 2010 PTAB Appeal and the 2011 Assessment Appeal. (*Id.* ¶ 37.) Plaintiffs successfully negotiated a comprehensive settlement agreement ("Comprehensive Settlement") that traded reduced stipulated assessments for the Naperville Property for Assessment Years 2011, 2012, and 2013 in return for Lucent's agreement to withdraw the pending 2010 PTAB Appeal. (*Id.* ¶ 40.) The parties intended for the Comprehensive Settlement to satisfy the intervenors in the 2010 PTAB Appeal. (*Id.* ¶ 41.)

On February 9, 2012, Sullivan had a telephone conversation with Colin Cameron, Lucent's manager of the Naperville Property, and reported the Assessor's final settlement offer to Lucent. (*Id.* ¶¶ 20, 43.) Sullivan then sent an email to Cameron and Lefkowitz reciting the details of the Assessor's final settlement offer. (*Id.* ¶ 44.) In his email, Sullivan estimated that Lucent would receive tax savings of $855,286 for 2011, $953,620 for 2012, and $1,012,620 for 2013, reflecting reductions of 34%, 38%, and 40%, respectively. (R. 89-19, Feb. 9, 2012 Email.)

---

[1] Although Lucent disputes this fact, there is no material difference between Plaintiffs' statement and Defendant's response.

5

Later that day, Cameron emailed Lefkowitz and Patrick Morrison, the lead manager of Lucent's North America Real Estate Department, and recommended that Lucent accept the offer and noted that after 2013 Lucent would be "subject to market rates once again." (Pl. Stmt. Facts ¶¶ 22, 46.) Lefkowitz responded to Cameron's email and said "I concur in Colin's recommendation that we accept their last offer." (R. 89-22, Feb. 9, 2012 Email.) In February 2012, Campbell secured Morrison's signature for the 2011, 2012, and 2013 stipulations of agreed assessed value for the Naperville Property and sent it to Sullivan to file with the Lisle Township Assessor and the DuPage County Board of Review. (Pl. Stmt. Facts ¶¶ 48, 51.) Lucent approved the Comprehensive Settlement and accepted the 2011, 2012, and 2013 stipulations of agreed assessed value for the Naperville Property in return for its agreement to withdraw the 2010 PTAB Appeal. (R. 105, Def. Resp. to Pl. Stmt. Facts ¶ 52.)

Based on the 2011, 2012, and 2013 stipulations of agreed assessed value for the Naperville Property and the last known tax rates, Sullivan estimated that the Comprehensive Settlement saved Lucent $910,999.90 for the 2011 tax year and $1,100,028 for the 2012 tax year, and that it will save Lucent $1,100,028 for the 2013 tax year. (*Id.* ¶¶ 53, 54.)[2] The Comprehensive Settlement also provided Lucent with stipulated assessed values for the Naperville Property that were 38% lower in 2012 and 40% lower in 2013 than the most recent assessed value. (Pl. Stmt. Facts ¶ 56.)

On February 9, 2012, Lefkowitz emailed Alexis Mendoza, an in-house attorney at Lucent, and recommended accepting the offer that Plaintiffs negotiated. (*Id.* ¶ 60; R. 89-29, Feb. 9, 2012 Email.) In the email, Lefkowitz wrote, "[t]he numbers are rough estimates and we may want to negotiate the legal fees down." (*Id.*) On February 10, 2012, Lefkowitz and Sullivan had

---

[2] Lucent notes that these figures are Sullivan's calculations, but does not directly challenge these calculations or provide competing figures.

6

a telephone conversation, in which Lefkowitz acknowledged that payment to Plaintiffs for at least the savings achieved for the 2011 tax year was fair and consistent with the Agreement. (Pl. Stmt. Facts ¶ 67.) On February 12, 2012 Morrison emailed Cameron regarding the Agreement and wrote, "[l]ooks to me like they get money base don [sic] 2011 and they are extending to 2012 and beyond. This is very open agreement." (Id. ¶ 63; R. 89-30, Feb. 12, 2012 Email.)

Robert Van Buskirk was a finance manager at Lucent supporting real estate for the Americas. (Pl. Stmt. Facts ¶ 25.) On February 22, 2012 Van Buskirk emailed Eleanor Yeung, another Alcatel employee, and instructed her:

> Please add a $400K provision in March for legal fees that we will owe external counsel for their work on supporting our claim that we were unfairly taxed in 2011 and that as part of the settlement, we have set valuations that will be in place in the next few years defined. … While we will likely not know the final number for the amount we owe in legal fees by the end of 1Q, I think we should accrue those costs in March where the good news from lower Naperville property taxes is offset by legal fees.

(R. 89-33, Feb. 22, 2012 Email.) Morrison forwarded Van Buskirk's email to Cameron and wrote, "[l]et's talk about the fees. It [sic] told him to use this for now." (*Id.*) On March 1, 2012 Cameron emailed Yeung the Agreement and stated, "[u]sing the initial 25% of the achieved one year savings ($854,686, based on last years mill levy) the attorneys would receive approximately $213,672." (Pl. Stmt. Facts ¶ 69.)

On May 29, 2012, Sullivan emailed Lefkowitz and Cameron a "statement of services rendered for the 2011 property tax reduction" identifying Plaintiffs' fee as $227,749.97. (R. 89-31, May 29, 2012 Email.) Lefkowitz forwarded the email to Cameron and wrote, "[t]his amount is in line with what the Engagement Letter says (see attached) and what we agreed was the total savings for 2011. However, it does not address their claim to entitlement to future years' savings." (R. 89-32, May 29, 2012 Email.) Similarly, Cameron forwarded the email to Morrison and wrote:

7

> We just received this bill. It is in line with the engagement letter and is accurate against the first year savings. I spoke with Lew and Alex this AM and would like to speak with you about our next step, I do think we should pay this bill since I believe no one disagrees that this is what was anticipated by all when we signed the engagement letter. It is the elephant in the room about the remaining 2 years Sullivan and Helm brought up that we need to discuss and how to either broach the issue when we send the check or ignore it completely among some other things.

(R. 89-31.)

On July 12, 2012, Lefkowitz wrote Sullivan and informed him that "your proposed fee of $500,000 is not acceptable." (R. 89-36, July 12, 2012 Letter.) Lefkowitz wrote, "any fee paid for any savings realized for the reduction in the 2011, 2012 and 2012 [sic] assessments strictly speaking are not governed by the original Engagement Agreement." (*Id*.) Lefkowitz also wrote "to suggest that the 2012 and 2013 assessments are entitled to the same treatment as the 2011 assessment is simply not appropriate nor acceptable." (*Id*.) On July 27, 2012, Helm wrote Lefkowitz demanding payment of attorney fees in the total amount of $751,311.58. (Def. Stmt. Add'l Facts ¶ 22.) On September 7, 2012, Plaintiffs filed their original complaint in this matter. (*Id*. ¶ 24.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L.

Ed. 2d 686 (2007). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted).

## ANALYSIS

The parties do not dispute that Illinois law governs the present breach of contract dispute. *See Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009) ("Courts do not worry about conflict of laws unless the parties disagree on which state's law applies.") (internal citation and quotation marks omitted).

**I.    Count I: Breach of Contract for 2011 Tax Year**

To establish a breach of contract claim under Illinois law, a plaintiff must show: "(1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Hess v. Kanoski & Assoc.*, 668 F.3d 446, 452 (7th Cir. 2012) (citation omitted); *see also Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 560 (7th Cir. 2012). Both parties agree that the Agreement was a valid contract and that it covered all of the work that Plaintiffs performed – including the work that impacted the 2011, 2012, and 2013 tax assessments. (*See* R. 90, Pl. Mem. at 4; R. 103, Def. Mem. at 12.) The parties disagree, however, on the interpretation of the fee provision in the Agreement. The fee provision provided, in relevant part, "[y]ou agree that your fee will be structured as a fee contingent on savings on the current year's taxes in these actions." (R. 89-7.) Defendant admits that all of Plaintiffs "services performed were performed pursuant to the terms" of the Agreement but asserts that the contingency upon which the fees were based did not occur

9

because Plaintiffs did not obtain any savings on Lucent's 2010 taxes. (Def. Mem. at 9-10.) Defendants also argue that the language regarding the fee agreement is unambiguous. (Def. Mem. at 6-7.)

The Court, however, has already found that the Agreement is ambiguous as to the phrase "the current year's taxes." (R. 23 at 4.) The Agreement is dated March 7, 2011 and does not specify individual assessment years. Rather, it states "you will represent Alcatel-Lucent in the contest of the real estate assessment of its real property located in Naperville, Illinois." (R. 89-7, Agreement.) If contract language is ambiguous, a court may consider extrinsic evidence to ascertain the parties' intent. *Gallagher v. Lenart*, 226 Ill.2d 208, 233 (2007). Normally when a contract term in question is ambiguous, a question of fact exists for the trier of fact, and a court may not grant summary judgment. *McCarthy v Illinois Cas. Co.*, 408 Ill. App. 3d 526, 535 (2011) (citing *Loyola Acad. v. S & S Roof Maint., Inc.*, 146 Ill.2d 263, 272 (1992)). Where, however, extrinsic evidence submitted by the parties leaves no genuine issue of material fact in dispute, a court may grant summary judgment. *Id.* (citing *William Blair & Co., LLC v. FI Liquidation Corp.*, 358 Ill. App. 3d 324, 342 (1st Dist. 2005)); s*ee also Citadel Group Ltd. v. Washington Reg. Med. Center*, 692 F.3d 580, 587 (7th Cir. 2012) ("even when a contract is ambiguous, as long as the extrinsic evidence bearing on the interpretation is undisputed and leads to only one reasonable interpretation, we can decide the matter on summary judgment").

Defendant argues that the Agreement entitled Plaintiffs to fees only on savings from the 2010 tax assessment, but the undisputed facts and Defendant's admissions prove otherwise. Here, the extrinsic evidence leaves no genuine question of material fact that the parties intended for Plaintiffs to receive *at least* 25% of the savings from the 2011 Tax Year. Lewis Lefkowitz, Lucent's primary in-house attorney on the matter, drafted and signed the Agreement on Lucent's

behalf. On November 21, 2011, Lucent executed a "Letter of Authority to Act in Matters of Property Taxation" that appointed Sullivan to represent Lucent with respect to the Naperville Property. Two days later, Plaintiffs filed the 2011 Assessment Appeal. The parties did not enter into a new fee agreement to address the 2011 Assessment Appeal. After filing this appeal, Plaintiffs began negotiating with Trowbridge regarding both the 2010 and 2011 assessments. In early 2012, they negotiated the Comprehensive Settlement.

On the same day that Sullivan presented the terms of the Comprehensive Settlement to Lucent, Lefkowitz recommended that Lucent accept the offer. The following day, Lefkowitz acknowledged in a phone call to Sullivan that "it was fair and consistent with the attorney fee agreement that Sullivan and Helm should be paid for at least the savings for the 2011 tax year." (Pl. Stmt. Facts ¶ 67.) Further, when Sullivan sent Lefkowitz a "statement of services rendered for the 2011 property tax reduction" in the amount of $227,749.97, Lefkowitz forwarded the email internally and admitted, "[t]his amount is in line with what the Engagement Letter says (see attached) and what we agreed was the total savings for 2011." (*Id.* ¶ 66.) In his deposition, Lefkowitz admitted that Plaintiffs' work related to the 2011, 2012, and 2013 tax years "was intended to be covered by" the Agreement. (*Id.* ¶ 17.)

The admissions of Lefkowitz, as Lucent's primary representative and the drafter and signer of the Agreement, are sufficient to establish that there is no genuine question of material fact as to Count I and the contingent fees due on the 2011 tax savings. Defendant's other representatives also admitted that the Agreement entitled Plaintiffs to 25% of the savings they achieved for the 2011 tax year. Colin Cameron was Lucent's manager of the Naperville Property. Like Lefkowitz, Cameron also recommended that Lucent accept the offer that Plaintiffs negotiated with the DuPage County Assessor. When Sullivan sent his statement of

11

services for the 2011 property tax reduction in the amount of $227,749.97, Cameron wrote in an internal email, "[w]e just received this bill. It is in line with the engagement letter and is accurate against the first year savings. I spoke with Lew and Alex this AM and would like to speak with you about our next step, I do think we should pay this bill since I believe no one disagrees that this is what was anticipated by all when we signed the engagement letter." (Pl. Stmt. Facts ¶ 64.) Patrick Morrison was the lead manager of Lucent's North America Real Estate Department. Shortly after Sullivan outlined the terms of the Comprehensive Settlement, Morrison emailed Cameron regarding the Agreement and wrote, "[l]ooks to me like they get money base don [sic] 2011 and they are extending to 2012 and beyond. This is very open agreement." (*Id.* ¶ 63.)

Even when viewed in the light most favorable to Lucent, the undisputed facts establish that the parties intended for the Agreement to entitle Plaintiffs to 25% of the tax savings they negotiated for Lucent for the 2011 tax year. The Court, therefore, grants Plaintiff summary judgment on Count I of the Second Amended Complaint in the amount of $227,749.97. Accordingly, the Court denies Defendant's cross-motion for summary judgment on Count I.

**II.    Count II: Anticipatory Breach of Contract for 2012 and 2013 Tax Years**

Plaintiffs also argue that they are entitled to summary judgment for anticipatory breach of contract based on the anticipated tax savings on the Naperville Property that Lucent will realize for the 2012 and 2013 tax assessments. Anticipatory breach, under Illinois law, "is a manifestation by one party to a contract of an intent not to perform its contractual duty when the time comes for it to do so even if the other party has rendered full and complete performance." *Tower Investors, LLC v. 111 East Chestnut Consultants, Inc.*, 371 Ill. App. 3d 1019, 1031 (1st Dist. 2007). "When one party repudiates a contract, the non-repudiating party is excused from

12

performing or may continue to perform and seek damages for the breach." *Id*. at 1032 (citations omitted). For a plaintiff to recover damages for anticipatory breach of contract, there must be "a positive and unequivocal manifestation of a party's intent not to render the performance promised under contract when time fixed in contract arrives." *Bituminous Cas. Corp. v. Commercial Union Ins. Co.*, 273 Ill. App. 3d 923, 930 (1st Dist. 1995). Further, when a party receives notice of the other party's intention not to perform, the promisee may elect to treat the repudiation as a breach putting an end to the contract. *Id.*

Plaintiffs argue that the Agreement entitled them to 25% of the Naperville Property's real estate tax savings they obtained for Lucent for the 2012 and 2013 tax years. The parties do not dispute that Lucent, through Lefkowitz, refused to pay the invoice for the 2011 tax year but suggested that the parties "agree on a fee that reasonably compensates you and Steve for the services rendered." (R. 89-36.) In that letter, Lefkowitz further stated, "to suggest that the 2012 and 2013 assessments are entitled to the same treatment as the 2011 assessment is simply not appropriate nor acceptable" and refused to pay Plaintiffs' bill. (*Id*.) Plaintiffs assert that after the close of discovery, DuPage County released the real estate tax bills for the 2012 tax year, which revealed that the Comprehensive Settlement saved Lucent $1,100,127.98. (Pl. Mem. at 12.) Plaintiffs further assert that when the 2013 year bills issue on or about May 1, 2014, they will show that the Comprehensive Settlement will have saved Lucent approximately $1,078,498.70. (SAC ¶ 20.) Defendant has not submitted any evidence disputing these amounts.

Defendants contend that the obligation of Lucent to pay Plaintiffs for the 2012 and 2013 tax savings under the Agreement will never occur and, thus, there can be no anticipatory breach of contract. (Def. Mem. at 10.) Defendant argues that the Agreement provided for payment to Plaintiffs only if Lucent received savings on its 2010 taxes. (*Id.* at 11.) Defendant, however, has

13

already admitted that the Agreement entitled Plaintiffs to fees for the savings Lucent received on its 2011 taxes. (*Supra*, pp 9-12.) Therefore, the relevant question for Count II is whether the Agreement provided for Plaintiffs to receive 25% of the tax savings for the 2012 and 2013 tax assessments. Unlike the claim in Count I for fees on the 2011 tax savings, the extrinsic evidence does not eliminate any questions of material fact as to whether the Agreement provides for payment to Plaintiffs for savings from the 2012 and 2013 tax years.

Defendant points to the language of the contract itself to support its argument that Plaintiffs are not entitled to any fees based on the 2012 and 2013 tax savings. Defendant asserts that the word "year's" in the fee provision of the Agreement is "clearly singular" and, thus, the fees cannot be based on work performed with respect to 2011, 2012, and 2013. (Def. Mem. at 11.) Defendant further points to Sullivan's February 6, 2011 email to Cameron and Lefkowitz, shortly before the parties executed the Agreement, in which Sullivan proposed that he and Helm file a PTAB appeal on behalf of Lucent. (R. 104-1, Feb. 6, 2011 Email.) In that email Sullivan wrote, "Steve Helm and I would negotiate a contingent fee agreement to represent ALU on this (similar to the Forest Preserve agreement but with the % fee based on 1st year savings only)." (*Id.*) While these points weigh in Defendant's favor, at this procedural posture the Court must view the facts and all reasonable inferences in a light most favorable to the non-movant. In considering Defendant's motion for summary judgment as to Count II, Plaintiffs are the non-movants.

Plaintiffs contend that Sullivan's February 6, 2011 email referred to tax savings for 2010, and that the tax savings they earned for Lucent were spread over the 2011, 2012, and 2013 assessments. (R. 126, Pl. Resp. at 15.) The extrinsic evidence also shows that Defendant contemplated that the Agreement provided for payment to Plaintiffs for 2012 and 2013 tax year

14

savings. As detailed above, Morrison emailed Cameron regarding the Agreement and wrote, "[l]ooks to me like they get money base don [sic] 2011 and they are extending to 2012 and beyond. This is very open agreement." (Pl. Stmt. Facts ¶ 63.) Upon receiving Plaintiff's bill for the 2011 tax year savings, Lefkowitz wrote that the bill "does not address their claim to entitlement to future years' savings." (*Id*. ¶ 66.) Cameron also addressed that bill and wrote, "[i]t is the elephant in the room about the remaining 2 years Sullivan and Helm brought up that we need to discuss and how to either broach the issue when we send the check or ignore it completely among some other things." (R. 89-31.) In addition, Morrison stated that he told Robert Van Buskirk, a finance manager at Lucent to add a $400,000 provision for legal fees in March 2012 for Plaintiffs fees. (R. 89-33.) This evidence indicates that Defendant contemplated owing Plaintiffs more than just the fees based on the 2011 tax year savings.

Both parties have presented evidence creating a genuine issue of material fact for trial as to whether the Agreement provides for contingent fees to Plaintiffs for tax savings they obtained on Lucent's behalf for the 2012 and 2013 tax years. Therefore the Court denies both Plaintiffs' and Defendant's motions for summary judgment as to Count II.

### III.  Count III: Unjust Enrichment

In the alternative to Counts I and II, Plaintiffs alleged a claim for unjust enrichment "in the event that the Court interprets the Agreement to not directly apply to real estate tax savings for the 2011, 2012 and 2013 tax years." (R. 40, Second Amended Complaint.) Both parties have moved for summary judgment on Count III. As stated above, both parties agree, at least for purposes of summary judgment, that the Agreement was a valid contract and that it covered all of the work that Plaintiffs' performed – including the work that impacted the 2011, 2012, and 2013 tax assessments. (*See* Pl. Mem. at 4; Def. Mem. at 12.) They disagree only on the fee

15

provision of the Agreement.  Because the Court grants Plaintiffs' motion for summary judgment on Count I for breach of contract with respect to Lucent's savings on the 2011 tax assessment, it denies as moot Plaintiffs' claim for unjust enrichment with respect to Lucent's savings on the 2011 tax assessment.  Because the parties agreed that the Agreement was a valid contract at this stage and because issues of fact remain on these years, the Court denies both parties' motions for summary judgment on Count III as to the 2012 and 2013 tax assessments.  In advance of trial, Plaintiffs should inform the Court if they still plan to pursue a claim of unjust enrichment in the alternative to its claim of anticipatory breach of contract for Lucent's savings on the 2012 and 2013 tax assessments.

## CONCLUSION

For these reasons, the Court (1) grants Plaintiffs' motion for summary judgment as to Count I in the amount of $227,749.97; (2) denies Plaintiffs' motion for summary judgment as to Counts II and III; and (3) denies Defendant's cross-motion for summary judgment.


Dated:  May 6, 2014                              ENTERED:

                                                 *signature*
                                                 AMY J. ST. EVE
                                                 United States District Court Judge