# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOHN P. SULLIVAN, D.D.S, J.D., and STEPHEN D. HELM, | ) ) ) |
| Plaintiffs, | ) No. 12 C 07528 ) |
| v. | ) ) ) Judge Amy J. St. Eve |
| ALCATEL-LUCENT USA INC., a Delaware Corporation, | ) ) ) |
| Defendant. | ) ) ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Defendant Alcatel-Lucent USA, Inc. ("Lucent" or "Defendant") has moved to strike portions of the written report of Plaintiffs' expert, Brian P. Liston, and to bar related testimony pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). For the reasons discussed below, the Court grants Lucent's motion.

## BACKGROUND

Lucent owns commercial property in Naperville, Illinois ("Naperville Property") (R. 93, Pls.' Rule 56.1 Stmt. Facts ¶ 3) and decided, in late 2010 or early 2011, to contest the 2010 real estate tax assessment of that property. (R. 104, Def. Rule 56.1 Stmt. Add'l Facts ¶ 3). Following an unsuccessful appeal on the 2010 tax assessment, Plaintiff John Sullivan, an attorney who had assisted with the processing of Lucent's appeal, had a discussion with the Lisle Township Assessor, John Trowbridge ("Trowbridge"), who proposed a settlement offer reducing the 2010 and 2011 tax assessment for the Naperville Property. (Def. Stmt. Add'l. Facts ¶ 7.) Sullivan recommended to Lucent's in-house counsel, Lewis Lefkowitz ("Lefkowitz"), that

Lucent decline the offer and file an appeal of the 2010 assessed valuation of the Naperville Property with the state review board. (R. 104-1, Feb. 6, 2011 Email.) Sullivan wrote to Lefkowitz that "Steve Helm and I would negotiate a contingent fee agreement to represent ALU on this (similar to the Forest Preserve agreement but with the % fee based on the 1st year savings only)." (*Id.*)

Lefkowitz retained Sullivan and Plaintiff Stephen Helm to prosecute the appeal in front of the Illinois Tax Appeal Board ("PTAB"). (Pl. Stmt. Facts ¶ 8.) The parties entered into a contingent fee agreement which provided that Plaintiffs' fee "will be structured as a fee contingent on savings on the current year's taxes in these actions as follows: (a) 25% of such amount if the matter is settled or otherwise resolved prior to trial; or (b) 30% of such amount if the matter is settled or otherwise resolved after trial." (R. 89-7, Contingent Fee Agreement.)

On April 18, 2011, Plaintiffs filed before the PTAB a Commercial Appeal for Assessment Year 2010 for the Naperville Property on behalf of Lucent. (Pl. Stmt. Facts ¶ 27.) The City of Naperville and School District 203 intervened in the PTAB Appeal because they already had received funds from Lucent's 2010 real estate taxes on the Naperville Property. (Pl. Stmt. Facts ¶ 41.) On or about October 27, 2011, the Lisle Township Assessor assessed the value of the Naperville Property for the 2011 calendar year at $42,829,710, which represented an increase of the $160 over the 2010 assessed value. (*Id.* ¶¶ 29-31.) On November 21, 2011, Lucent executed a "Letter of Authority to Act in Matters of Property Taxation" that appointed Sullivan to represent Lucent as its property tax agent with respect to the Naperville Property. (R. 89-16, Letter of Authority.) Pursuant to that Letter of Authority, on November 23, 2011, Plaintiffs filed an appeal for Tax Year 2011 with the DuPage County Board of Review ("2011

2

Assessment Appeal"). (Pl. Stmt. Facts ¶ 35.) The parties did not execute a new agreement to address Plaintiffs' work negotiating the 2011 Assessment. (Pl. Stmt. Facts ¶ 58.)

After filing the 2011 Assessment Appeal, Plaintiffs began negotiating with Trowbridge regarding the 2010 PTAB Appeal and the 2011 Assessment Appeal. (*Id.* ¶ 37.) Plaintiffs successfully negotiated a comprehensive settlement agreement ("Comprehensive Settlement") that traded reduced stipulated assessments for the Naperville Property for Assessment Years 2011, 2012, and 2013 in return for Lucent's agreement to withdraw the pending 2010 PTAB Appeal. (*Id.* ¶ 40.) The parties intended for the Comprehensive Settlement to satisfy the City of Naperville and School District 203. (*Id.* ¶ 41.)

Lucent approved the Comprehensive Settlement and accepted the 2011, 2012, and 2013 stipulations of agreed assessed value for the Naperville Property in return for its agreement to withdraw the 2010 PTAB appeal. (R. 105, Def. Resp. to Pl. Stmt. Facts ¶ 52.) Plaintiffs estimate that the Comprehensive Settlement saved Lucent $910,999.90 for the 2011 tax year and $1,100,028 for the 2012 tax year, and that it would save Lucent $1,100,028 for the 2013 tax year. (*Id.* ¶¶ 53, 54.) Additionally, the Comprehensive Settlement also provided Lucent with stipulated assessed values for the Naperville Property that were 38% lower in 2012 and 40% lower in 2013 than the most recent assessed value. (Pl. Stmt. Facts ¶ 56)

Internal discussions between Lucent employees acknowledged Plaintiffs' entitlement to 25% of Lucent's 2011 tax savings. (*See* Pl. Stmt. Facts ¶¶ 63, 69; R. 89-30, Feb. 12, 2012 Email.) Internal discussions, however, also acknowledged uncertainty with respect to Plaintiffs' entitlement to the 2012 and 2013 tax savings. (*See* R. 89-30, Feb. 12, 2012 Email; R. 89-32, May 29, 2012 Email; R. 89-31.) In July 2012, Lucent notified Plaintiffs that the 2011, 2012, and 2013

3

tax savings were not governed by the contingent fee structure in the original Engagement Agreement, and rejected Plaintiffs' proposed fee of $500,000. (R. 89-36, July 12, 2012 Letter)

On September 7, 2012, Plaintiffs filed their original three-count complaint in this matter. (Def. Stmt. Add'l Facts ¶ 24.) In Count I, Plaintiffs alleged a breach of contract claim for the 2011 tax savings based on the contingent fee agreement ("Agreement") with Lucent. In Count II, Plaintiffs alleged an anticipatory breach of contract claim for the 2012 and 2013 tax savings based on work they performed on Lucent's behalf pursuant to the Agreement. In the alternative, in Count III, Plaintiffs alleged an unjust enrichment claim for tax savings that Plaintiffs secured for Lucent for tax years 2011, 2012, and 2013.

Plaintiffs and Defendant filed competing motions for summary judgment on each of the three counts. On May 6, 2014, the Court granted Plaintiffs' motion for summary judgment as to Count I in the amount of $227,749.97, finding that the undisputed facts established that the parties intended for the Agreement to entitle Plaintiffs to 25% of the tax savings they negotiated for the Lucent for the 2011 tax year. (R. 149.) The Court denied summary judgment on Counts II and III because issues of fact exist. Plaintiffs subsequently moved to voluntarily dismiss Count III, and the Court granted the motion. (R. 178.)

Plaintiffs engaged Brian P. Liston as one of their two burden-of-proof experts. (R. 131-1, Liston Expert Rep.) Liston, along with attorney Gregory J. Lafakis, submitted an expert report regarding the dispute at issue here. Liston is an attorney who has experience in the fields of eminent domain and property tax appeals. (R. 131-1, Liston CV.) The report consists of their summary of the dispute as well as six opinions and the underlying bases for those opinions. (*Id.* ¶ 7.) After submitting the joint expert report, Plaintiffs withdrew Mr. Lafakis as an expert. (R. 131-2, Nov. 5, 2013 email.)

4

**LEGAL STANDARD**

"The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and the Supreme Court's opinion in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993)." *Lewis v. Citgo Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). Rule 702 provides, in relevant part, that "[i]f scientific, technical or other specialized knowledge will assist the trier of fact[,] . . . a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion. . . ." *Id.* *See also Happel v. Walmart Stores, Inc.*, 602 F.3d 820, 824 (7th Cir. 2010). "The proponent of the expert bears the burden of demonstrating that the expert's testimony would satisfy the *Daubert* standard" by a preponderance of the evidence. *Lewis*, 561 F.3d. at 705.

Under the expert-testimony framework, courts perform the gate-keeping function of determining whether the expert testimony is both relevant and reliable prior to its admission at trial. *See id.*; *United States v. Pansier*, 576 F.3d 726, 737 (7th Cir. 2009) ("To determine reliability, the court should consider the proposed expert's full range of experience and training, as well as the methodology used to arrive [at] a particular conclusion."). In doing so, courts "make the following inquiries before admitting expert testimony: first, the expert must be qualified as an expert by knowledge, skill, experience, training, or education; second, the proposed expert must assist the trier of fact in determining a relevant fact at issue in the case; third, the expert's testimony must be based on sufficient facts or data and reliable principles and methods; and fourth, the expert must have reliably applied the principles and methods to the facts of the case." *Lees v. Carthage College*, 714 F.3d 516, 521-22 (7th Cir. 2013); *see also Stollings v. Ryobi Tech., Inc.*, 725 F.3d 753, 765 (7th Cir. 2013); *Pansier*, 576 F.3d at 737.

In assessing the admissibility of an expert's testimony, the Court's focus "must be solely on principles and methodology, not on the conclusions they generate." *Winters v. Fru-Con Inc.*, 498 F.3d 734, 742 (7th Cir. 2007) (quoting *Chapman v. Maytag Corp.*, 297 F.3d 682, 687 (7th Cir. 2002)). "The goal of *Daubert* is to assure that experts employ the same 'intellectual rigor' in their courtroom testimony as would be employed by an expert in the relevant field." *Jenkins v. Bartlett*, 487 F.3d 482, 489 (7th Cir. 2007) (quoting *Kumbo Tire Co., Ltd. V. Carmichael*, 526 U.S. 137, 152 (1999)). "A *Daubert* inquiry is not designed to have the district judge take the place of the jury to decide ultimate issues of credibility and accuracy." *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012).

## ANALYSIS

Defendant challenges specific statements and opinions in Mr. Liston's report on two grounds: (1) that they are unrelated to his expertise, and (2) that they are legal opinions and conclusory in nature.

**I. Brian Liston**

    **A. Qualifications**

Brian Liston is a licensed attorney in the state of Illinois, and has been practicing since 1991. (Liston CV.) He is currently a partner in The Law Offices of Liston & Tsantilis, P.C. in Chicago Illinois, and focuses his practice on the areas of eminent domain litigation, property tax appeals and incentives for land use. (*Id.*) Liston represents large companies and landowners in eminent domain and property tax litigation matters in suits filed by local, municipal and state agencies throughout the United States.

    **B. Opinions**

Defendant challenges the following statements as being unrelated to Liston's expertise:

**Expert Report at 2**: A review of Mr. Lefkowitz's correspondence in July 2012 to Attorney Sullivan clearly shows that it was Lucent's and Lefkowitz's position that the fee agreement did not cover any work on the 2011, 2012, and 2013 tax savings.

**Expert Report at 4**: Furthermore, Lucent's own internal documents clearly show that Lucent's control group checked Plaintiffs' figures and agreed with them. Internally, Mr. Cameron, Attorney Lefkowitz, and Mr. Morrison were all acknowledging that Sullivan's May 28, 2012 invoice in the amount of $227,749.97 should be paid.

**Expert Report at 7**: Even though internal emails of Lucent admitted full responsibility to pay the 2011 tax savings component in the amount of $227,749.97, [Lucent refused to pay the invoice, arguing that the fee agreement only covered tax savings for 2010.]

Lefkowitz's email to co-counsel Mendoza on February 9, 2012 indicts Lucent as having predetermined to negotiate down whatever fee claim the Plaintiffs might make related to the $3.0 million plus tax savings.

**Expert Report at 9**: Opinion No. l. The March 7, 2011 Engagement Letter was intended to cover all the work that Sullivan and Helm were performing related to the negotiated settlement between 'Lucent and Assessor Trowbridge.

**Expert Report at 10**: Lucent's own internal documents showed $400,000 as an accrued expense, for fees owed, and various internal documents reflected acknowledgement that the fee agreement did cover the services performed by Sullivan and Helm.

Lucent had determined internally that at least this much was owed and that the statement reflected the proper amount owed for 2011 tax savings component.

**Expert Report at 12**: Lucent's own memo regarding the establishment of a $400,000 accrual for liability to Sullivan and Helm shows recognition by Lucent that it had, in fact, obtained a significant tax savings and that at least $400,000 would be owed to Sullivan and Helm under the terms of the contingent fee agreement.

**Expert Report at 12-13**: Sullivan's and Helm's testimony clearly support the fact that Lucent received the benefit of a substantial tax savings for tax years 2011, 2012, and 2013 that is expected expected to total in excess of $3 million which will be fully realized by Lucent in 2014.

**Expert Report at 13**: Opinion No. 5. Lucent's own internal documents and deposition testimony of Lucent personnel clearly support the conclusion that: (a) Lucent understood that it was fully obligated under the fee agreement to pay Sullivan and Helm for tax savings at 25% for tax years other than for 2010; (b) at least $400,000 in fees had been "accrued'' by Lucent for Sullivan's and Helm's services; (c) Lucent had predetermined to negotiate Sullivan's and Helm's fees down before Lucent had even discussed the fees with either Sullivan or Helm; and (d) Lucent obtained a very clear tax benefit on tax savings for years 2011, 2012, and 2013 and made a business decision to dismiss the 2010

appeal as a quid pro quo for what it perceived as 'great news,' being the projected tax savings for 2011, 2012, and 2013.

Defendant additionally challenges the following statements made by Liston as being improper legal opinions and conclusions:

> **Expert Report at 4**: It is our opinion that there is no basis for any dispute as to either liability or the amount owed for 2011 tax savings obtained by Sullivan and Helm for Lucent. Whether based upon the written fee agreement or upon principles of unjust enrichment, Lucent received a tax savings of $910,999.90 in May 2012 on 2011 taxes as a direct result of Sullivan's and Helm's efforts.
>
> **Expert Report at 5**: It appears to the undersigned that there is clear liability under Count I of the Complaint.
>
> Regardless of whether the March 7, 2011 fee agreement covered the tax savings for 2011, 2012, and/or 2013, there is clear liability against Lucent under either Count II (the fee agreement) or Count III (unjust enrichment), and the amount due and owing should be the same under either Count.
>
> **Expert Report at 5-6**: It is our opinion that there is no difference in either liability or in the amount of money that Lucent owes the Plaintiffs. If liability and recovery is to be based on principles of unjust enrichment, it is our opinion that Lucent is clearly liable to Plaintiffs under Count I and III.
>
> **Expert Report at 10**: The May 2012 invoice from Sullivan for the 2011 tax savings component accurately sets for the amount of fees due under the Agreement.
>
> **Expert Report at 12**: Whether the bases for the favorable tax savings of approximately $3.0 million is based upon the March 2011 Engagement Letter or upon principals of unjust enrichment, the fee entitlement for Sullivan and Helm would be the same.
>
> **Expert Report at 13**: The 'benefit' to Lucent was a tax savings of approximately $3.0 million plus deferred through the payment date of 2014. The written agreement between Lucent and Plaintiffs showed that Lucent and Plaintiffs were in agreement on a 25 percent factor to be applied times the savings/benefit, thus, the fees are identical under Counts II and III of the Complaint.
>
> [Lucent understood that] it was fully obligated under the fee agreement to pay Sullivan and Helm for tax savings at 25% for tax years other than for 2010.

8

## II. Liston Does Not Draw on Any Expertise When Reading and Interpreting Lucent's Internal Documents and Correspondences

In many of Liston's opinions, he simply reads and interprets documents. In doing so, he does not draw on any expert qualifications or experience. As such, his readings and interpretations are merely gratuitous, and would be unhelpful to a prospective jury. "[T]he crucial question is, 'On *this subject* can a jury from *this person* receive appreciable help?'" *Cage v. City of Chicago*, 979 F. Supp. 2d. 787, 834 (N.D. Ill. 2013). "[E]xpert testimony is helpful to the jury if it concerns a matter beyond the understanding of the average person." *Davis v. Duran,* 276 F.R.D. 227, 231 (N.D. Ill. 2011). Moreover, "[a]n expert's opinion is helpful only to the extent the expert draws on some special skill, knowledge, or experience to formulate that opinion; the opinion must be an *expert* opinion (that is, an opinion informed by the witness' expertise) rather than simply an opinion broached by a purported expert." *United States v. Benson,* 941 F.2d 598, 604 (7th Cir. 1991), *amended on unrelated grounds,* 957 F.2d 301 (7th Cir.1992).

"Unless the expertise adds something, the expert is at best offering a gratuitous opinion, and at worst is exerting undue influence on the jury . . ." *United States v. Hall,* 93 F.3d 1337, 1343 (7th Cir. 1996). "[E]xpert testimony does not assist the trier of fact when the jury is able to evaluate the same evidence and is capable of drawing its own conclusions without the introduction of a proffered expert's testimony." *Aponte v. City of Chicago,* No. 09 C 8082, 2011 WL 1838773, at *2 (N.D.Ill. May 12, 2011).

The following are examples of Liston merely reading and interpreting documents without drawing on any additional expertise:

> **Expert Report at 2**: A review of Mr. Lefkowitz's correspondence in July 2012 to Attorney Sullivan clearly shows that it was Lucent's and Lefkowitz's position that the fee agreement did not cover any work on the 2011, 2012, and 2013 tax savings.

9

**Expert Report at 4**: Furthermore, Lucent's own internal documents clearly show that Lucent's control group checked Plaintiffs' figures and agreed with them. Internally, Mr. Cameron, Attorney Lefkowitz, and Mr. Morrison were all acknowledging that Sullivan's May 28, 2012 invoice in the amount of $227,749.97 should be paid.

**Expert Report at 7**: Even though internal emails of Lucent admitted full responsibility to pay the 2011 tax savings component in the amount of $227,749.97, [Lucent refused to pay the invoice, arguing that the fee agreement only covered tax savings for 2010.]

Lefkowitz's email to co-counsel Mendoza on February 9, 2012 indicts Lucent as having predetermined to negotiate down whatever fee claim the Plaintiffs might make related to the $3.0 million plus tax savings.

**Expert Report at 10**: Lucent's own internal documents showed $400,000 as an accrued expense, for fees owed, and various internal documents reflected acknowledgement that the fee agreement did cover the services performed by Sullivan and Helm.

Lucent had determined internally that at least this much was owed and that the statement reflected the proper amount owed for 2011 tax savings component.

**Expert Report at 12**: Lucent's own memo regarding the establishment of a $400,000 accrual for liability to Sullivan and Helm shows recognition by Lucent that it had, in fact, obtained a significant tax savings and that at least $400,000 would be owed to Sullivan and Helm under the terms of the contingent fee agreement."

**Expert Report at 13**: Opinion No. 5. Lucent's own internal documents and deposition testimony of Lucent personnel clearly support the conclusion that: (a) Lucent understood that it was fully obligated under the fee agreement to pay Sullivan and Helm for tax savings at 25% for tax years other than for 2010; (b) at least $400,000 in fees had been "accrued" by Lucent for Sullivan's and Helm's services; (c) Lucent had predetermined to negotiate Sullivan's and Helm's fees down before Lucent had even discussed the fees with either Sullivan or Helm; and (d) Lucent obtained a very clear tax benefit on tax savings for years 2011, 2012, and 2013 and made a business decision to dismiss the 2010 appeal as a quid pro quo for what it perceived as 'great news,' being the projected tax savings for 2011, 2012, and 2013.

Liston does not rely on nor does he bring any additional expertise in his reading and interpretation of these documents. Average jurors are capable of reading such documents and determining for themselves their meaning and significance. Although Liston is a purported expert in the field property tax appeals, these interpretations do not require such expertise and he does not bring any expert analysis to them. *See In re Prempro Products Liability Litig.*, 586

F.3d 547, 570 (8th Cir. 2009). He simply reads some of them. Liston invades the province of the jury by opining that various documents "show" (Expert Report at 12), "clearly show" (Expert Report at 2 and 4), "reflect acknowledgement of" (Expert Report at 10), and "clearly support" (Expert Report at 13) certain conclusions. These opinions are merely gratuitous and hence improper.

### III. Liston Improperly Comments on and Interprets Testimony

Liston also invades the province of the jury by improperly commenting on and interpreting testimony. It is a fundamental premise of the trial system that "determining the weight and credibility of witness testimony ... 'belongs to the jury who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men.' " *Davis* 277 F.R.D. at 370 (quoting *United States v. Scheffer,* 523 U.S. 303, 313, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998)). "[A]n expert witness may not usurp the jury's function to weigh evidence and make credibility determinations." *United States v. Farrell,* 563 F.3d 364, 377 (8th Cir. 2009). Furthermore, "expert witnesses are not allowed to sort out possible conflicting testimony or to argue the implications of those inconsistencies. That is the role of the lawyer, and it [is] for the jury to draw its own conclusions from the testimony it hears." *Duran,* 277 F.R.D. at 370.

Examples of Liston improperly commenting on and interpreting witness testimony include:

> **Expert Report at 12-13**: Sullivan's and Helm's testimony clearly support the fact that Lucent received the benefit of a substantial tax savings for tax years 2011, 2012, and 2013 that is expected to total in excess of $3 million which will be fully realized by Lucent in 2014.
>
> **Expert Report at 13**: Opinion No. 5. Lucent's own internal documents and deposition testimony of Lucent personnel clearly support the conclusion that: (a) Lucent understood that it was fully obligated under the fee agreement to pay Sullivan and Helm for tax

11

savings at 25% for tax years other than for 2010; (b) at least $400,000 in fees had been "accrued'' by Lucent for Sullivan's and Helm's services; (c) Lucent had predetermined to negotiate Sullivan's and Helm's fees down before Lucent had even discussed the fees with either Sullivan or Helm; and (d) Lucent obtained a very clear tax benefit on tax savings for years 2011, 2012, and 2013 and made a business decision to dismiss the 2010 appeal as a quid pro quo for what it perceived as 'great news,' being the projected tax savings for 2011, 2012, and 2013.

An expert's testimony must "assist the trier of fact in determining a relevant fact at issue in the case." *Lees*, 714 F.3d at 521. By sorting out and opining on witness testimony, Liston attempts to usurp the traditional role of the jury to determine "the weight and credibility" of witness testimony. It is the jury's role to assess a witness's credibility and to determine what weight to give that testimony. Liston may not offer these improper opinions.

### IV. Liston Improperly Remarks on the Intentions of the Parties Involved

Liston also improperly opines on Lucent's intentions. An expert "must refrain from giving an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto." *Pansier*, 576 F.3d at 738 (citation and quotations omitted). *See also DePaepe v. Gen. Motors Corp.*, 141 F.3d 715, 720 (7th Cir. 1998) ("He could give an opinion as an engineer that reducing the padding saved a particular amount of money; he might testify as an engineer that GM's explanation for the decision was not sound (from which the jury might infer that money was the real reason); but he could not testify as an expert that GM had a particular motive."); *Johnson v. Wyeth LLC*, No. 10-C-2690, 2012 WL 1204081, at *3 (D. Ariz. Apr. 11, 2012) (precluding plaintiff's experts from offering "opinions concerning defendants' motive, intent, knowledge, or other state of mind"); *George v. Kraft Foods Global, Inc.*, 800 F. Supp. 2d 928, 932-33 (N.D. Ill. 2011) (excluding expert's state of mind opinion as speculative and unhelpful).

Opinion No. 1 (Expert Report at 9) purports to opine on the work that the March 7, 2011 Engagement Letter "intended" to cover. It reads as follows:

> **Expert Report at 9**: Opinion No. l. The March 7, 2011 Engagement Letter was intended to cover all the work that Sullivan and Helm were performing related to the negotiated settlement between 'Lucent and Assessor Trowbridge.

Liston has no basis to opine on the parties' intentions or motives when entering into the agreement. To state outrightly that the Engagement Letter was intended to cover all the work related to the negotiated settlement is speculative and unhelpful given the ultimate responsibility of the jury to make that determination. The witnesses at trial will testify regarding their intentions, and the jury will evaluate that evidence and draw its own conclusions.

## V. Liston Improperly Offered Legal Opinions and Conclusions

Lastly, several of the Mr. Liston's opinions are inadmissible legal conclusions. As a general rule, an expert may not offer legal opinions. *Jiminez v. City of Chicago*, 732 F.3d 710, 721 (7th Cir. 2013). "Where the proffered expert offers nothing more than a 'bottom line' conclusion, he does not assist the trier of fact." *U.S. Gypsum Co. v. Lafarge North America Inc.*, 670 F. Supp. 2d. 748, 765 (N.D. Ill. 2010) (quoting *Clark v. Tanaka Corp.*, 192 F.3d 750, 759 (7th Cir. 1999)). As such, "expert testimony that contains a legal conclusion that determines the outcome of a case is inadmissible." *RLJCS Enterprises, Inc. v. Prof'l Ben. Trust Multiple Welfare Ben. Plan & Trust*, 487 F.3d 494, 498 (7th Cir. 2007). Experts "cannot testify about legal issues on which the judge will instruct the jury." *United States v. Sinclair,* 74 F.3d 753, 757 n. 1 (7th Cir. 1996). Courts will not admit testimony on purely legal matters and comprised solely of legal conclusions. *Good Shepherd Manor Found. v. City of Momence,* 323 F.3d 557, 564 (7th Cir. 2003).

The following statements and opinions have been identified as inadmissible legal conclusions and merely present Mr. Liston's beliefs as to how the fact finder should rule on the questions of liability and damages:

> **Expert Report at 4**: It is our opinion that there is no basis for any dispute as to either liability or the amount owed for 2011 tax savings obtained by Sullivan and Helm for Lucent. Whether based upon the written fee agreement or upon principles of unjust enrichment, Lucent received a tax savings of $910,999.90 in May 2012 on 2011 taxes as a direct result of Sullivan's and Helm's efforts.

> **Expert Report at 5**: It appears to the undersigned that there is clear liability under Count I of the Complaint.

> Regardless of whether the March 7, 2011 fee agreement covered the tax savings for 2011, 2012, and/or 2013, there is clear liability against Lucent under either Count II (the fee agreement) or Count III (unjust enrichment), and the amount due and owing should be the same under either Count.

> **Expert Report at 5-6**: It is our opinion that there is no difference in either liability or in the amount of money that Lucent owes the Plaintiffs. If liability and recovery is to be based on principles of unjust enrichment, it is our opinion that Lucent is clearly liable to Plaintiffs under Count I and III.

> **Expert Report at 10**: The May 2012 invoice from Sullivan for the 2011 tax savings component accurately sets for the amount of fees due under the Agreement.

> **Expert Report at 12**: Opinion No. 4. Whether the bases for the favorable tax savings of approximately $3.0 million is based upon the March 2011 Engagement Letter or upon principals of unjust enrichment, the fee entitlement for Sullivan and Helm would be the same.

> **Expert Report at 13**: The 'benefit' to Lucent was a tax savings of approximately $3.0 million plus deferred through the payment date of 2014. The written agreement between Lucent and Plaintiffs showed that Lucent and Plaintiffs were in agreement on a 25 percent factor to be applied times the savings/benefit, thus, the fees are identical under Counts II and III of the Complaint.

By making explicit conclusions about the various elements of the dispute between Lucent and Plaintiffs, Liston acts as an auxiliary advocate for Plaintiffs and usurps the role of the jury. It is inappropriate for Liston to opine, for example, that "there is clear liability against Lucent under either Count II (the fee agreement) or Count III (unjust enrichment)," and that "if liability

and recovery is to be based on principles of unjust enrichment, it is our opinion that Lucent is clearly liable to Plaintiffs under Count I and III." (Expert Report at 5-6). In submitting these opinions, Liston has done exactly what the Seventh Circuit prohibits. Mr. Liston, therefore, cannot testify regarding these opinions.

## CONCLUSION

For the reasons discussed above, the Court grants Lucent's Motion to Strike Plaintiffs' Expert Testimony and Bar Expert Testimony. Mr. Liston may not testify regarding the opinions and statements that Lucent identified in its Motion.

Dated: July 17, 2014

ENTERED:

AMY J. ST. EVE
United States District Court Judge